**Fill in this information to identify the case:**

Debtor 1     Gerard Dominguez

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the : Northern     District of   Illinois
(State)

Case number    23-04376

## Official Form 410S1

# Notice of Mortgage Payment Change

**12/15**

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:**    PennyMac Loan Services, LLC        **Court claim no.** (if known):    14

**Last four digits** of any number you use to identify the debtors' account:    XXXXXX9145

**Date of payment change:**
Must be at least 21 days after date of this notice    3/1/2025*

**New total payment:**
Principal, interest, and escrow, if any    $2,004.09

| Part 1: | Escrow Account Payment Adjustment |
|---|---|

1. **Will there be a change in the debtors' escrow account payment?**

   ☒ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law.  Describe the basis for the change.  If a statement is not attached, explain why: _____

   Current escrow payment:    $ _____        New escrow payment :    $ _____

| Part 2: | Mortgage Payment Adjustment |
|---|---|

2. **Will the debtors' principal and interest payment change based on an adjustment to the interest rate in the debtors' variable-rate account?**

   ☒ No
   ☐ Yes  Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law.  If a notice is not attached, explain why: _____

   Current interest rate:    %        New interest rate:    %

   Current principal and interest payment:    $ _____        New principal and interest payment:    $ _____

| Part 3: | Other Payment Change |
|---|---|

3. **Will there be a change in the debtors' mortgage payment for a reason not listed above?**

   ☐ No
   ☒ Yes  Attach a copy of any documents describing the basis for the change, such as repayment plan or loan modification agreement.
   *(Court approval may be required before the payment change can take effect.)*

   Reason for change: Partial Claim Modification

| | | | |
|---|---|---|---|
| Current mortgage payment: | $ 2,319.86 | New mortgage payment: | $ 2,004.09 |
| Current interest rate: | 3.37500% | New interest rate: | 3.37500% |
| Current escrow payment: | $ 1,200.23 | New escrow payment: | $ 1,164.36 |
| Current p&I payment: | $ 1,119.63 | New p&i payment: | $ 839.73 |

Debtor 1   **Gerard Dominguez**_____   Case number *(if known)* 23-04376
    First Name   Middle Name   Last Name

| **Part 4:** | **Sign Here** |
|---|---|

The person completing this Notice must sign it.  Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☒ I am the creditor's authorized agent

**I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.**

X   */s/Mukta  Suri*_____   Date   05/07/2025_____
   Signature

Print:   Mukta_____ Suri_____   Title   Authorized Agent for Creditor___
   First Name   Middle Name   Last Name

Company   McCalla Raymer Leibert Pierce, LLP_____

Address   1544 Old Alabama Road_____
   Number   Street

   Roswell_____ GA_____ 30076_____
   City   State   ZIP Code

Contact phone   (469) 458-2311_____   Email   mukta.suri@mccalla.com_____

*Under Rule 3002.1(b) of the Federal Rules of Bankruptcy Procedure, the holder of a claim shall file a notice of any change in payment amount, no later than 21 days before a payment in the new amount is due. Creditor requests that since the debtor's payment decreased on (3/1/2025) that the payment effective date is (3/1/2025).

|  | Bankruptcy Case No.: 23-04376 |
|---|---|
| In Re: | Chapter:          13 |
| Gerard Dominguez | Judge:          Jacqueline P. Cox |

## CERTIFICATE OF SERVICE

I, Mukta  Suri, of McCalla Raymer Leibert Pierce, LLP, 1544 Old Alabama Road, Roswell, GA 30076, certify:

That I am, and at all times hereinafter mentioned, was more than 18 years of age;

That on the date below, I caused to be served a copy of the within NOTICE OF MORTGAGE PAYMENT CHANGE filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, with proper postage affixed, unless another manner of service is expressly indicated:

Gerard Dominguez
2515 Grove Street
River Grove, IL 60171

David H Cutler                          *(Served via ECF at cutlerfilings@gmail.com)*
Cutler & Associates, Ltd.
4131 Main St.
Skokie, IL 60076

Thomas H Hooper, Trustee          *(Served via ECF Notification)*
Office of the Chapter 13 Trustee
55 E. Monroe St.
Suite 3850
Chicago, IL 60603

Adam Brief                          *(Served via ECF Notification)*
Office of the U. S. Trustee, Region 11
219 South Dearborn
Room 873
Chicago, IL 60604

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:   06/03/2025     By:   */s/Mukta  Suri*
                    (date)                          Mukta  Suri
                                                    Authorized Agent for Creditor

Loan No.:
FHA Case

# ILLINOIS PAYMENT SUPPLEMENT
# PROMISSORY NOTE
# (Secondary Lien)

## THIS NOTE IS SECURED BY A JUNIOR MORTGAGE

December 30, 2024

2515 GROVE STREET, RIVER GROVE, IL 60171

This Note is given by Borrower to the Secretary of Housing and Urban Development ("HUD"), as lender and holder of this Note, to acknowledge any and all sums loaned by HUD on Borrower's behalf, pursuant to the authority to assist borrowers in default through the payment of a partial claim under Title II of the National Housing Act, as amended, (12 U.S. Code § 1715u) (the "Act").

## Uniform Covenants

### 1.  DEFINITIONS

"Borrower" means each person signing at the end of this Note, and Borrower's successors and assigns. Borrower is prohibited from assigning this Note without HUD's prior written permission.

"FHA" means the Federal Housing Administration within the U.S. Department of Housing and Urban Development.

"FHA-insured primary note" and "FHA-insured primary mortgage" refer to the promissory note and mortgage, deed of trust, or other security instrument" representing the borrower's debt incurred in connection with the financing of the Property.

"HUD" means the Secretary of Housing and Urban Development, as lender and holder of this Note, and its successors and assigns.

"Payment Supplement Agreement" means the Payment Supplement Agreement Rider dated **December 30, 2024** by and between the Borrower and HUD, the terms of which are incorporated into and supplement the provisions of this Note as if the Payment Supplement Agreement is a part of this Note.

"Note" or "Payment Supplement Note" means this Payment Supplement Promissory Note executed by the Borrower.

"Payment Supplement" is the monthly payment made to reduce the principal owed by the Borrower on the Borrower's FHA-insured primary mortgage, consistent with the terms of the Payment Supplement Loss Mitigation requirements of HUD.

Illinois Payment Supplement Promissory Note—Secondary Lien

"Property" means Borrower's property identified in the Security Instrument.

"Property Address" means the address provided above.

"Secretary" means the Secretary of Housing and Urban Development or the Secretary's authorized representatives.

"Security Instrument" means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with the Payment Supplement Agreement and which secures the amounts advanced under this Note.

**2.      BORROWER'S PROMISE TO PAY**

In return for amounts received from HUD for the benefit of Borrower under the terms of the Payment Supplement Agreement, the terms of which are incorporated as if fully set forth herein, Borrower promises to pay to the order of HUD an amount equal to the sum of all funds applied to the Borrower's primary mortgage made under the Payment Supplement Agreement, up to the principal sum of **Twenty  Thousand Six Hundred Forty Four and 26/100ths** Dollars (U.S. **$20,644.26**), with such sums bearing zero percent (0%) interest as described the Payment Supplement Agreement and in accordance with the terms hereof.

**3.      PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects HUD from losses, which might result if Borrower defaults under this Note.

**4.      MANNER OF PAYMENT**

(A) Time and Amount

Borrower must repay all sums outstanding on this Note when the first of the following events occurs, if earlier:

(i) Borrower has paid in full all amounts due under the FHA-insured primary note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii) The maturity date of the FHA-insured primary note has been accelerated. The maturity date of the FHA-insured primary note and related mortgage, deed of trust or similar security instrument may be accelerated in event of any sale or transfer of the Property, in whole or in part, or in the event the Borrower and any other Borrower no longer owns the Property after an assumption, or

(iii) The FHA-insured primary note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or

(iv) The maturity of the FHA-insured primary mortgage.

(B) Place

Payment shall be made to the Department of Housing and Urban Development c/o HUD's National Servicing Center 301 NW 6th Street, Suite 200, Oklahoma City, OK 73102 or any such other place as HUD may designate in writing.

**5.      BORROWER'S RIGHT TO PREPAY**

**Illinois Payment Supplement Promissory Note—Secondary Lien**

Borrower has the right to prepay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment pursuant to the terms of the Payment Supplement Agreement unless HUD agrees in writing to those changes.

### 6. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights or presentment and notice of dishonor. "Presentment" means the right to require HUD to demand payment of amounts due. "Notice of dishonor" means the right to require HUD to give notice to other persons that amounts due have not been paid.

### 7. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to keep all the promises made in the Note. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. HUD may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all the amounts owed under this Note.

Borrower may not assign this Note to another person or entity without HUD's prior written approval.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Borrower **GERARD DOMINGUEZ**

Date: / / 25 / 25

**Loan Originator Organization: PennyMac Loan Services, LLC, NMLSR ID: 35953**
**Individual Loan Originator's Name NMLSR ID: N/A**

Illinois Payment Supplement Promissory Note—Secondary Lie

After recording please mail to:
**SERVICELINK**
**ATTN: LOAN MODIFICATION**
**SOLUTIONS**
**320 COMMERCE, SUITE 100**
**IRVINE, CA 92602**

This instrument was prepared by:
**PENNYMAC LOAN SERVICES, LLC**
**JAY BOTELLO**
**6101 CONDOR DRIVE, SUITE 200**
**MOORPARK, CA 93021**

Permanent Index Number:

———————————————— *[Space Above This Line For Recording Data]* ————————————————

Loan N
FHA C

# PAYMENT SUPPLEMENT DEED OF TRUST

THIS SUBORDINATE Deed of Trust ("Security Instrument") is given on **December 30, 2024**. The mortgagor is **GERARD DOMINGUEZ AND MIGDALIA M. ORTEGA** whose address is **2515 GROVE STREET, RIVER GROVE, IL 60171** ("Borrower").

This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, SW, Washington, DC 20410 ("HUD"). Borrower is obligated to repay HUD an amount equal to the sum of all advances, including future advances made on Borrower's behalf, up to the principal sum of **Twenty Thousand Six Hundred Forty Four and 26/100ths** Dollars (U.S. **$20,644.26**), under the terms of Borrower's Payment Supplement Note dated the same date as this Payment Supplement Security Instrument (hereinafter "Note" or "Payment Supplement Note"), which provides for the full debt, if not required to be paid earlier, is due and payable upon maturity or termination of the Borrower's Note, consistent with the terms of the Payment Supplement Agreement and Payment Supplement Note. This Security Instrument secures to HUD: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the HUD, with the power of sale the following described property located in **COOK** County, **IL**:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

which has the address of **2515 GROVE STREET, RIVER GROVE, IL 60171**, ("Property Address");

---

**Illinois Payment Supplement Security Instrument**

Pa

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and HUD covenant agree as follows:

**UNIFORM COVENANTS**

1. **Payment of Principal.** Borrower shall pay the principal of the debt evidenced by the Note when due.

2. **Borrower Not Released; Forbearance By HUD Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by HUD to Borrower, or any successor in interest of Borrower, shall not operate to release the liability of the original Borrower or Borrower's successor in interest. HUD shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by HUD in exercising any right or remedy under the Note, Payment Supplement Agreement, or this Security Instrument shall not be a waiver of or preclude the exercise of any right or remedy.

3. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit Borrower and any successors and assigns. Borrower may not assign this Security Instrument to another person or entity without HUD's prior written approval. To the extent there is more than one Borrower, each Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but is not required by HUD to execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that HUD and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument, the Payment Supplement Agreement, or the Note without that Borrower's consent.

4. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to HUD. Any notice to HUD shall be given by first class mail to:

    Department of Housing and Urban Development,
    National Servicing Center,
    Attention: Payment Supplement,
    301 NW 6th Street, Suite 200, Oklahoma City, OK 73102

or any address HUD designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or HUD when given as provided in this paragraph.

5. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. If any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument, the Payment Supplement Agreement, or the Note that can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument, Payment Supplement Agreement, and the Note are declared to be severable.

6. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**NON-UNIFORM COVENANTS.** Borrower and HUD further covenant and agree as follows:

7. **Acceleration; Remedies. If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Note, Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Secretary under this paragraph or applicable law.**

   **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the Note or this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

8. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

9. **Waiver of Homestead.** In accordance with Illinois law, Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

10. **Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's Property. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the

Property. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the Property, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

If HUD requires immediate payment in full under Paragraph 4 of the Note, HUD may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property, as provided in the Act. Nothing in the preceding sentence shall deprive HUD of any rights otherwise available to a HUD under this paragraph or applicable law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Borrower    - **GERARD DOMINGUEZ**    Date: 1/25/25

Borrower    **MIGDALIA M. ORTEGA** *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt    Date: 1/25/25

## ACKNOWLEDGMENT

State of _ILLINOIS_ §
§
County of _COOK_ §

The foregoing instrument was acknowledged before me this _25 JANUARY 2025_ by **GERARD DOMINGUEZ AND MIGDALIA M. ORTEGA**.

_____
Signature of Person Taking Acknowledgment

_JAMES G ANGELICO_
Printed Name

_NOTARY_
Title or Rank

Serial Number, if any: _214391_

Official Seal
JAMES G ANGELICO
Notary Public, State of Illinois
Commission No. 214391
My Commission Expires May 9, 2027

(Seal)

**Loan Originator Organization: PennyMac Loan Services, LLC, NMLSR ID: 35953**
**Individual Loan Originator's Name NMLSR ID: N/A**

## EXHIBIT A

**BORROWER(S): GERARD DOMINGUEZ AND MIGDALIA M. ORTEGA**

**LOAN NUMBER**

**LEGAL DESCRIPTION:**

**STATE OF ILLINOIS, COUNTY OF COOK, AND DESCRIBED AS FOLLOWS:**

**LOT 9 IN A.E. TYLER'S RESUBDIVISION OF LOTS 3 THROUGH 6 IN BLOCK 4 IN RHODES AND CLARKE'S SUBDIVISION OF PARTS OF SECTION 26 AND SECTION 27, TOWNSHIP 40 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

Permanent Index Number: 12-26-315-006-0000

**ALSO KNOWN AS: 2515 GROVE STREET, RIVER GROVE, IL 60171**

# RIDER TO THE PAYMENT SUPPLEMENT PROMISSORY NOTE
# PAYMENT SUPPLEMENT AGREEMENT

BORROWER(S): **GERARD DOMINGUEZ and MIGDALIA M. ORTEGA** ("Borrower")

FHA CASE NUMBER:

PROPERTY ADDRESS: **2515 GROVE STREET, RIVER GROVE, IL 60171** ("Property")

SERVICER: **PennyMac Loan Services, LLC** ("Servicer")

ACCOUNT NUMBER: "FHA-Insured Mortgage")

THIS PAYMENT SUPPLEMENT AGREEMENT ("Agreement") is entered into on **December 30, 2024**, by **GERARD DOMINGUEZ and MIGDALIA M. ORTEGA** ("Borrower").

**1. PURPOSE:** The United States Department of Housing and Urban Development, through the Federal Housing Administration ("FHA"), insures your Mortgage on your single-family residence. This Payment Supplement Agreement, which is attached as a rider to and incorporated in your Payment Supplement Promissory Note ("Note" or "Payment Supplement Note"), explains the terms and conditions of the Payment Supplement you are completing with your Servicer. Funds advanced on your behalf in connection with the Payment Supplement are advanced by the Secretary of the United States Department of Housing and Urban Development ("HUD" or "Lender").

**2. DEFINITION:** Servicer, as used in this Payment Supplement Agreement, means your current FHA-approved Mortgage Servicer listed above and any other FHA-approved Mortgagee that services your FHA-Insured Mortgage in the future.

**3. PROGRAM SUMMARY:** You are currently in default or imminent default (as defined by HUD), generally meaning that you have not made monthly mortgage payments or have indicated that you will not be able to make future payments, under the terms of your FHA-Insured Mortgage. Your Servicer has determined that you meet the eligibility requirements for a Payment Supplement, an option that uses funds provided by HUD to bring your FHA-Insured Mortgage current and then pay a portion of the principal you owe each month to temporarily reduce the amount of your monthly payment on your FHA-Insured Mortgage.

Your Servicer determined the amount of your Payment Supplement using FHA's formulas and FHA's Payment Supplement requirements.

If you choose to accept the Payment Supplement, you are required by law to agree to repay all funds advanced by HUD in connection with this Payment Supplement. Your agreement to repay the Payment Supplement is established through and evidenced by the Payment Supplement Note, this Payment Supplement Agreement rider, and secured by the Payment Supplement Deed of Trust ("Payment Supplement Documents").

The funds provided by HUD for the Payment Supplement will be provided directly to your Servicer, who is required by HUD to administer your Payment Supplement in accordance with FHA's Payment Supplement requirements.

In a Payment Supplement, your Servicer will apply funds to the amount needed to bring your FHA-insured Mortgage current. Your Servicer will deposit all remaining Payment Supplement Funds provided by HUD in a zero-interest, restricted deposit account (the "Payment Supplement Account"), which will be used to pay the Payment Supplement portion of the monthly principal due on your FHA-insured Mortgage in accordance with Payment Supplement requirements and as provided in this Agreement.

The Payment Supplement funds provided to your Servicer are restricted. Payment Supplement Funds provided by HUD to your Servicer may not be used for any other purpose or on behalf of any other person. You have no discretion in the use and application of Payment Supplement Funds. Your Servicer has no discretion either and must strictly adhere to FHA's Payment Supplement requirements in administering the Payment Supplement Account.

By statute, 12 U.S.C. 1715u(b), your Servicer must apply the Payment Supplement Funds to your FHA-insured Mortgage as follows: first to arrearages (amounts past due and payable), and then to a portion of the unpaid principal on your FHA-Insured Mortgage.

## 4. APPROVED PAYMENT SUPPLEMENT:

a. **Total Approved Amount of Payment Supplement** – up to **$20,644.26**

b. **Arrearage Covered by Payment Supplement** -**$10,567.86**

c. **Payment Supplement Period** – The Payment Supplement will be provided to cover a portion of the principal due beginning **March 1, 2025** through **February 1, 2028** and cannot be extended.

d. **Amount of Monthly Principal Payment Reduction** – **$279.90** You will receive up to 36 Monthly Principal Reductions when you make your required portion of your monthly mortgage payment during the Payment Supplement Period.

e. Borrower's Monthly Principal and Interest Obligation during the Payment Supplement Period – **$839.73**

f. Borrower's Monthly Mortgage Payment at the start of the Payment Supplement Period – **$2,004.09**[1]

**5. REQUIRED DOCUMENTS:** You must complete and return all of the Payment Supplement Documents to participate in the Payment Supplement.

This Payment Supplement Agreement is incorporated by reference into and enforceable through the Payment Supplement Note and Deed of Trust. In signing this Payment Supplement Agreement, you accept that this Payment Supplement Agreement is legally binding and part of the terms and conditions in the Payment Supplement Documents.

---

[1] The amount of your monthly mortgage payment is set by the terms of your FHA-insured Mortgage and includes escrow amounts, such as property taxes, insurance, or other assessments, as applicable. If your escrow amount changes, your monthly mortgage payment during the Payment Supplement Period may also change. Please refer to information from your Servicer regarding your monthly mortgage payment obligations. You are responsible for timely payment of all amounts owed under your FHA-insured Mortgage less the amount of the Monthly Principal Reduction shown in 4.d. above.

**6. LOAN TERMS AND REPAYMENT:** The total amount approved for your Payment Supplement funds is listed above, in 4.

You agree to repay any Payment Supplement Funds provided by HUD and applied to your FHA-insured Mortgage, up to the amount listed in 4.a. through the Payment Supplement Note. In accordance with the terms of this Agreement and the Payment Supplement Note, the outstanding balance of the Note will not accrue interest and you are not required to make any payments to HUD until one of the events described in the Payment Supplement Note occurs.

The Payment Supplement Note is secured by the Payment Supplement Deed of Trust. When you sign the Payment Supplement Deed of Trust, you create a subordinate lien on your Property.

Your Payment Supplement Period is listed above in 4.c., unless terminated earlier under the terms of this Payment Supplement Agreement. The conditions for early termination of your Payment Supplement Period are described in paragraph 10.

You will not be eligible for a new Payment Supplement until 36 months after the date you executed the Payment Supplement Documents.

**7. FUNDING AND DISBURSEMENT:** HUD will provide the total amount that may be needed to fund your Payment Supplement, listed above at 4.a., for the duration of the Payment Supplement Period, listed above at 4.c., in a single lump-sum deposit. These funds will be maintained in a Payment Supplement Account by your Servicer.

    a. *Arrearage Payment.* If you have an arrearage identified above at 4.b., your Servicer will first pay any amount in arrears (amounts past due and payable) on your FHA-Insured Mortgage, including funds to cure escrow shortages, late escrows, advances for mortgage insurance premiums, and other advances made by your Servicer when authorized under your FHA-Insured Mortgage documents, consistent with the terms of FHA's Payment Supplement requirements. The Payment Supplement will bring your FHA-Insured Mortgage current. After this initial payment, your Servicer may not make future disbursements from the Payment Supplement Account to cover any new arrearages.

    b. *Your Continuing Monthly Payment Obligation; Balance Due to Servicer.* Your portion of the monthly mortgage payment is equal to the entire monthly payment due on your FHA-Insured Mortgage (including escrows, mortgage insurance premiums, and any other advances made by your Servicer when authorized under your FHA-Insured Mortgage documents) less the Monthly Principal Reduction. Your Servicer will continue to communicate your payment obligation for the billing cycle using their current communication methods.

    Your participation in the Payment Supplement does not change the terms of your FHA-Insured Mortgage. If you do not make your portion of the monthly mortgage payment to receive the Monthly Principal Reduction, you remain ultimately responsible for the full amount of the monthly payment.

    c. *Payment Supplement – Monthly Principal Reduction.* For each month of your Payment Supplement Period, after your Servicer receives and accepts your payment for your portion of your monthly payment due under the FHA-Insured Mortgage (all amounts owed by you under 7.b.), your Servicer will disburse the Payment Supplement Funds in the amount of your Monthly Principal Reduction (shown above at 4.c.) to cover the remaining unpaid principal due on your FHA-Insured Mortgage for that month. Your Servicer will not apply any Monthly Principal Reduction after the final month of the Payment Supplement Period.

d. Your Servicer may not disburse funds from the Payment Supplement Account for any purpose other than those listed in 7.a. and 7.c. above, or as provided in paragraphs 10 and 11 below in connection with the termination of the Payment Supplement Period.

**8. LATE PAYMENT(S):** If you fail to make your monthly payment when due during your Payment Supplement Period (the amount owed under 7.b., above), or you have made a payment for less than the full amount due, your Servicer will not apply the Monthly Principal Reduction from the Payment Supplement Account for that month. Your Servicer must apply the Monthly Principal Reduction once they receive the late payment, provided the late payment is received and accepted during the Payment Supplement Period.

Your Servicer is prohibited from disbursing funds from the Payment Supplement Account to cover your portion of the monthly payment required under your FHA-Insured Mortgage, or any late fees that may have accrued under the terms of your FHA-Insured Mortgage. If you do not make your payments as required to receive the Monthly Principal Reduction, you remain ultimately responsible for the full amount of the monthly payment due on your FHA-insured mortgage, including any late fees that may have accrued under the FHA-insured mortgage.

The timing of the Servicer's application or the withholding of the Monthly Principal Reduction portion of your total monthly payment does not impact any determination that a payment under the FHA-Insured Mortgage was late and will not result in an accrued late fee.

**9. IMPACT OF RE-DEFAULT ON PAYMENT SUPPLEMENT:** If you redefault on your FHA-insured Mortgage during the Payment Supplement Period, you may be eligible to receive the Monthly Principal Reduction for any month for which you pay your portion of the monthly mortgage payment unless the Payment Supplement Period terminates in accordance with paragraph 10.

**10. TERMINATION OF PAYMENT SUPPLEMENT PERIOD:** Your Payment Supplement Period terminates after the completion of the Payment Supplement Period as set forth in 4.c., or earlier if any of the following occurs:

a. you voluntarily terminate your Payment Supplement, through written notice to your Servicer affirming that you can resume your full monthly Mortgage Payment without the Payment Supplement,

b. you redefault on your FHA-insured Mortgage during the Payment Supplement Period and:

(i) you complete any permanent FHA loss mitigation home retention option in connection with that default other than a new standalone Partial Claim; or

(ii) the Servicer has completed a foreclosure action, you have completed a Deed-in-Lieu of Foreclosure, or you have executed an Approval to Participate (ATP) agreement for a Pre-Foreclosure Sale;

c. any assumption or transfer of title to the Property occurs (including an Exempted Transfer, i.e. those transferred subject to Garn St. Germain Depository Institutions Act);

d. you sell the Property;

e. you refinance the FHA-insured Mortgage;

f. you have paid in full all amounts due under the FHA-insured primary note; or

g. any other event occurs requiring repayment of the Payment Supplement Note.

**Payment Supplement Agreement Rider**

**11. REMAINING PAYMENT SUPPLEMENT FUNDS:** When your Payment Supplement Period terminates, HUD requires your Servicer to remit any remaining, unapplied Payment Supplement Funds held in the Payment Supplement Account to HUD.

You have no ability to direct the application of these remaining Payment Supplement Funds, which must be utilized consistent with this Payment Supplement Agreement, but you will only be responsible for repayment of funds disbursed from the Payment Supplement Account and applied to your FHA-Insured Mortgage in accordance with this Agreement and the Payment Supplement Note.

**12. PREPAYMENT:** As stated in your Payment Supplement Note, you are allowed to prepay the outstanding balance on your Payment Supplement Note, in whole or in part, without a charge or penalty. If you choose to make a prepayment, you must submit your prepayment to:

> Department of Housing and Urban Development
> c/o National Servicing Center
> 301 NW 6th Street, Suite 200
> Oklahoma City, OK 73102

or any other place HUD designates to you through written notice.

**13. CAUTION, CONSEQUENCE FOR FAILURE TO REPAY YOUR PAYMENT SUPPLEMENT WHEN REQUIRED:** Delinquencies, defaults, foreclosures, and abuses of mortgage loans involving programs of the Federal Government can be costly and detrimental to your credit, now and in the future.

As the Borrower on the Payment Supplement Documents, you are legally obligated to repay the outstanding balance under the Note when required. Selling or transferring the Property after you sign the Payment Supplement Documents does not change your liability for repaying Payment Supplement funds disbursed consistent with the terms of this Agreement and the Payment Supplement Note.

The Payment Supplement Note is a debt owed by you to the Federal Government and is subject to federal debt collection laws and procedures.

The Federal Government, its agencies, agents and assigns, are authorized to take any and all of the following actions in the event you fail to may any payment due on the Payment Supplement Note: (1) report your name and account information to a credit bureau; (2) assess additional interest and penalty charges for the period of time that payment is not made; (3) assess charges to cover additional administrative costs incurred by the Government to service your account; (4) offset amounts owed to you under other Federal programs; (5) refer your account to a private attorney, collection agency or mortgage servicing agency to collect the amount due, foreclose the Deed of Trust, sell the property and seek judgment against you for any deficiency; (6) refer your account to the Department of Justice for litigation in the courts; (7) if you are a current or retired Federal employee, take action to offset your salary, or civil service retirement benefits; (8) refer your debt to the Internal Revenue Service for offset against any amount owed to you as an income tax refund; and (10) report any resulting written-off debt to the Internal Revenue Service as your taxable income. All these actions can and will be used to recover any debts owed when it is determined to be in the interest of the Federal Government to do so.

**14. PERSONAL LIABILITY; SUCCESSORS AND ASSIGNS; JOINT AND SEVERAL LIABILITY.** You are fully and personally liable for repayment of the Payment Supplement Funds, evidenced by the Payment Supplement Note. Any person who is a guarantor, surety, or endorser of the Payment Supplement Note is also fully and personally liable. The covenants and agreements of the Payment Supplement Documents bind and benefit, except as provided in this agreement, your successors and assigns. If there is more than one Borrower, the covenants and agreements of the Payment Supplement Documents are joint and several.

**15. NON-BORROWER CO-SIGNERS.** Any person who co-signs the Payment Supplement Deed of Trust but does not execute the Payment Supplement Note: (a) is co-signing the Payment Supplement Deed of Trust only to mortgage, grant and convey that person's interest in the Property under the terms of Payment Supplement Deed of Trust; (b) is not personally obligated to pay the sums secured by the Payment Supplement Deed of Trust; and (c) agrees that you and HUD may agree to extend, modify, forbear, or make any accommodations with regard to the term of the Payment Supplement Deed of Trust or the Payment Supplement Note without that person's consent.

**16. NO THIRD-PARTY BENEFICIARIES.** The Payment Supplement does not, and is not intended to, confer any rights or remedies upon any person other than Borrower, Servicer, and HUD. Borrower agrees they are not a third-party beneficiary to the Contract of Insurance between HUD and Servicer.

**17. CONFLICT.** Except to the extent expressly provided herein, the Payment Supplement Note shall remain unmodified and in full force and effect in accordance with its terms, and you hereby ratify all such terms and confirm the effectiveness thereof. In the event of an inconsistency between the terms of the Payment Supplement Note and the terms of this Agreement, the terms of this Agreement shall control.

**18. PRIVACY ACT STATEMENT:** Purpose – In signing this Payment Supplement Agreement, you authorize HUD and your Servicer, directly or through authorized representatives, to request and obtain your personal information when needed to verify your eligibility and terms for the Payment Supplement.

Uses of Information to be Obtained – HUD is required to protect the information it obtains in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a. HUD may disclose your information (other than tax return information) for certain routine uses, including to other government agencies for law enforcement purposes, and for unemployment/income verification purposes. Any persons engaging in unauthorized disclosures or uses of information obtained for the purposes described above may be subject to penalties.

If you have any questions about this Privacy Act Statement, you can contact the office of the HUD Privacy Officer, at (202) 402-8047.

Borrower - **GERARD DOMINGUEZ**

Date: 1/25/25

Borrower **MIGDALIA M. ORTEGA \*SIGNING SOLELY TO ACKNOWLEDGE THIS AGREEMENT, BUT NOT TO INCUR ANY PERSONAL LIABILITY FOR THE DEBT**

Date: 1/25/25

Payment Supplement Agreement Rider



P.O. Box 514387
Los Angeles, CA 90051-4387

**Escrow Account Disclosure Statement**

**Statement Date:** January 2, 2025
**Loan Number:**

**Property Address:**
2515 GROVE ST
RIVER GROVE IL 60171

**Questions?** Visit our website @
**PENNYMAC.COM**
800.777.4001 (Se Habla Español)
M - F: 5:00AM - 6:00PM PT
Sat: 7:00AM - 11:00AM PT

GERARD  DOMINGUEZ
2515 GROVE ST
RIVER GROVE, IL 60171-1629

## Annual Escrow Account Review

At least once each year, PennyMac Loan Services, LLC ("Pennymac") reviews your escrow account to make sure there is enough money to pay your property taxes and/or insurance premiums. This statement informs you of any adjustments to your monthly payment, shows you how much money you currently have in your escrow account and how much you will need in the next 12 months.

## Your New Mortgage Payment

During the next year, your escrow account balance is projected to have a surplus (meaning more funds than necessary to pay your taxes and/or insurance as they come due).  See Your Escrow Surplus on page 2 for more details.

| Description | Current Monthly Payment Amount | New Monthly Payment Amount |
|---|---|---|
| Principal and Interest | $1,119.63 | $1,119.63 |
| Escrow Payment | $1,200.52 | $1,164.36 |
| Overage Credit | ($0.29) | $0.00 |
| Total Payment Amount | $2,319.86 | $2,283.99 |

Please start making the 'New Monthly Payment Amount' on March 01, 2025.  Payments due prior to this date should be made at the 'Current Monthly Payment Amount' shown.

## Projected Escrow Account Activity

Over the next year, Pennymac expects to pay $13,972.34 from your escrow account. Your new monthly escrow payment is $1,164.36.

| Escrow Item Description | Annual Amount | | Monthly Amount |
|---|---|---|---|
| County Tax: | $8,465.47 | | |
| Flood Ins: | $823.47 | | |
| Hazard Ins: | $2,833.00 | | |
| Mortgage Insurance: | $1,850.40 | | |
| Total Payments from Escrow: | $13,972.34 | ÷ 12 = | $1,164.36 |

## Projected Escrow Account Activity (Continued)

Below is a projection of escrow account activity from March 01, 2025 through February 28, 2026. These amounts may change when the actual payments become due.

| Month | Deposit(s) to Escrow | Payment(s) from Escrow | Descriptions | Projected Balance |
|-------|---------------------:|-----------------------:|--------------|------------------:|
| Beginning Escrow Balance | | | | $5,387.76 |
| Mar 2025 | $1,164.36 | $0.00 | | $6,552.12 |
| Mar 2025 | $0.00 | $154.20 | Mortgage Insurance | $6,397.92 |
| Apr 2025 | $1,164.36 | $0.00 | | $7,562.28 |
| Apr 2025 | $0.00 | $154.20 | Mortgage Insurance | $7,408.08 |
| Apr 2025 | $0.00 | $2,833.00 | Homeowners | $4,575.08 |
| Apr 2025 | $0.00 | $823.47 | Flood Insurance | $3,751.61 |
| May 2025 | $1,164.36 | $0.00 | | $4,915.97 |
| May 2025 | $0.00 | $154.20 | Mortgage Insurance | $4,761.77 |
| Jun 2025 | $1,164.36 | $0.00 | | $5,926.13 |
| Jun 2025 | $0.00 | $154.20 | Mortgage Insurance | $5,771.93 |
| Jul 2025 | $1,164.36 | $0.00 | | $6,936.29 |
| Jul 2025 | $0.00 | $4,001.24 | County Tax | $2,935.05 |
| Jul 2025 | $0.00 | $154.20 | Mortgage Insurance | $2,780.85 [1] |
| Aug 2025 | $1,164.36 | $0.00 | | $3,945.21 |
| Aug 2025 | $0.00 | $154.20 | Mortgage Insurance | $3,791.01 |
| Sep 2025 | $1,164.36 | $0.00 | | $4,955.37 |
| Sep 2025 | $0.00 | $154.20 | Mortgage Insurance | $4,801.17 |
| Oct 2025 | $1,164.36 | $0.00 | | $5,965.53 |
| Oct 2025 | $0.00 | $154.20 | Mortgage Insurance | $5,811.33 |
| Nov 2025 | $1,164.36 | $0.00 | | $6,975.69 |
| Nov 2025 | $0.00 | $154.20 | Mortgage Insurance | $6,821.49 |
| Dec 2025 | $1,164.36 | $0.00 | | $7,985.85 |
| Dec 2025 | $0.00 | $154.20 | Mortgage Insurance | $7,831.65 |
| Jan 2026 | $1,164.36 | $0.00 | | $8,996.01 |
| Jan 2026 | $0.00 | $154.20 | Mortgage Insurance | $8,841.81 |
| Feb 2026 | $1,164.36 | $0.00 | | $10,006.17 |
| Feb 2026 | $0.00 | $4,464.23 | County Tax | $5,541.94 |
| Feb 2026 | $0.00 | $154.20 | Mortgage Insurance | $5,387.74 |
| Ending Escrow Balance | | | | $5,387.74 |
| Totals | $13,972.32 | $13,972.34 | | |

[1] Lowest projected balance.

## Your Escrow Surplus

Based on the projected activity above, our review shows that you will have a surplus of $760.54. Due to your loan being in a delinquent status, this surplus amount will remain in your escrow account.

| Lowest Projected Balance | $2,780.85 |
|---|---|
| Minimum Required Balance | $2,020.31 |
| Escrow Surplus | $760.54 |

Pennymac requires a minimum balance up to one-sixth of the estimated total annual payments from your escrow account, unless state law or your mortgage contract requires less, to help cover any unexpected increase in taxes and/or insurance. The minimum required balance does not include mortgage insurance.

## Escrow Account History

The following is the statement of activity in your escrow account from July 01, 2024 through February 28, 2025.

Last year, we anticipated that payments from your account would be made during this period equaling $10,132.98. Your lowest monthly balance should not have exceeded $2,092.63, or 1/6 of anticipated payments from the account, unless your mortgage contract or state law specifies a lower amount.

Your actual lowest monthly balance was greater than $2,092.63. The items with an asterisk on the table below may explain this.

The table below shows the Projected and Actual account history for the previous escrow account period.

| Month | Deposits to Escrow | | Payments from Escrow | | Description | Escrow Balance | |
|---|---|---|---|---|---|---|---|
| | Projected | Actual | Projected | Actual | | Projected | Actual |
| **Beginning Escrow Balance** | | | | | | $5,484.99 | $6,531.02 |
| Jul 2024 | $1,200.23 | $1,200.23 | $4,435.15 | $4,001.24 * | County Tax | $2,250.07 | $3,730.01 |
| Jul 2024 | $0.00 | $0.00 | $154.20 | $154.20 | MIP/PMI | $2,095.87 | $3,575.81 |
| Aug 2024 | $1,200.23 | $0.00 * | $154.20 | $154.20 | MIP/PMI | $3,141.90 | $3,421.61 |
| Sep 2024 | $1,200.23 | $0.00 * | $154.20 | $154.20 | MIP/PMI | $4,187.93 | $3,267.41 |
| Oct 2024 | $1,200.23 | $0.00 * | $154.20 | $154.20 | MIP/PMI | $5,233.96 | $3,113.21 |
| Nov 2024 | $1,200.23 | $0.00 * | $154.20 | $154.20 | MIP/PMI | $6,279.99 | $2,959.01 |
| Dec 2024 | $1,200.23 | $1,200.23 | $154.20 | $154.20 | MIP/PMI | $7,326.02 | $4,005.04 |
| Jan 2025 | $1,200.23 | $0.00 * | $154.20 | $0.00 * | MIP/PMI | $8,372.05 | $4,005.04 |
| Feb 2025 | $1,200.23 | $0.00 * | $4,464.23 | $4,464.23 E | County Tax | $5,108.05 | ($459.19)[2] |
| Feb 2025 | $0.00 | $6,001.15 *E | $154.20 | $154.20 E | MIP/PMI | $4,953.85 | $5,387.76 |
| **Ending Escrow Balance** | | | | | | $4,953.85 | $5,387.76 |
| **Totals** | $9,601.84 | $8,401.61 | $10,132.98 | $9,544.87 | | | |

[2] Lowest actual balance.
An asterisk '*' beside an amount indicates a difference from projected activity, either in the amount or the date.
The letter 'E' beside an amount indicates that the payment has not yet occurred, but is estimated to occur as shown.
At the time of analysis, Pennymac assumes that you will make all scheduled mortgage payments by or before the effective date of your new payment (shown in the Projected Escrow Account Activity section above).

## Other Important Information

| | | | |
|---|---|---|---|
| **How to Contact Us** | PENNYMAC.COM<br>Available 24/7 on all your devices:<br>PC, Tablet, and Mobile.<br>*El sitio web y las declaraciones están disponibles en español.*<br>**Go Paperless today!** | Pennymac Customer Service:<br>800.777.4001<br>M-F: 5:00AM - 6:00PM PT<br>Sat: 7:00AM - 11:00AM PT | PennyMac Loan Services, LLC<br>Attn: Correspondence Unit<br>P.O. Box 514387<br>Los Angeles, CA 90051-4387 |
| **How to Make a Payment** | **Auto-Pay \*:** Enroll in Auto-Pay, on our website, to set up recurring payments from the bank account of your choice.<br>**Pay Online:** Make a one-time payment on our website. | **Pay-by-Phone:** 800.777.4001<br>*(Fees may apply to use this service)*<br>**Western Union:**<br>Code City: *PennyMac*<br>Pay To: *PennyMac Loan Services*<br>Code State: *CA*<br>ID Number: *Enter Loan Number* | **Check \*\*:** Mail to Pennymac:<br>**Standard Address:** P.O. Box 660929<br>Dallas, TX 75266-0929<br>**Overnight Address:**<br>Attn: Lockbox Operations<br>20500 Belshaw Ave.<br>Carson, CA 90746 |
| **Tax and Insurance Information** | **Property Tax Bills:**<br>If you receive a tax bill, you do not need to take any action. (**Please note:** Supplemental/ Additional tax bills are the responsibility of the homeowner; Pennymac will pay them from the escrow account upon request.) | **General Insurance Questions:** 866.318.0208<br>**Insurance Information:** Anytime there is a change to your insurance policy please provide your insurance carrier the following information:<br>**Mortgagee Clause:**<br>PennyMac Loan Services, LLC<br>Its Successors and/or Assigns<br>P.O. Box 6618<br>Springfield, OH 45501-6618 | |
| **Credit Reporting Information** | We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. | | |
| **Important Consumer Information** | This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose. However, if your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally. | | |
| **Requests for prior payment adjustments:** | To request funds for a prior payment be applied differently, you **must** notify Pennymac within 90 days of the original transaction. After 90 days, we will only change the application of funds if the transaction was applied contrary to your documented instructions. | | |

*\* If you are enrolled in a Pennymac Auto-Pay program, and received a payment change notification, the new payment amount will be drafted on your scheduled draft date. (The principal curtailment amount will not change.) If you pay via online bill payment, please update the payment amount with your financial institution to ensure timely processing of your payment.*

*\*\* When you pay with a check, you authorize Pennymac either to use information from your check to make a one-time electronic fund transfer (EFT) from your account, or to process the payment as a check transaction. When we use information from your check to make an EFT, funds may be withdrawn from your account on the same day Pennymac receives your payment. Please note that your financial institution will not send back your check. If funds are returned unpaid, a return service charge may be assessed to your loan whether processing your payment as a check or an EFT, as allowed by applicable law.*

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass.

**NEW YORK** - If a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income (SSI); 2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds; and 11) Ninety percent of your wages or salary earned in the last sixty days. PennyMac Loan Services, LLC is registered with the Superintendent of the New York State Department of Financial Services (Department). You may obtain further information or file a complaint by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting www.dfs.ny.gov.

**NORTH CAROLINA** - Licensed by the North Carolina Office of the Commissioner of Banks. Complaints regarding the servicing of your mortgage may be submitted to the Office of the Commissioner of Banks, 316 W. Edenton Street, Raleigh, NC 27603, (919) 733-3016. Licensed by the North Carolina Department of Insurance. Permit No. 119504607 - 6101 Condor Dr., Suite 200, Moorpark, CA 93021. Permit No. 119505929 - 14800 Trinity Blvd., Fort Worth, TX 76155. Permit No. 119506567 - 3043 Townsgate Rd., Suite 200, Westlake Village, CA 91361. Permit No. 119506570 - 2201 West Plano Parkway, Suites 150 and 300, Plano, TX 75075. Permit No. 119507419 - 10550 West Charleston Blvd., Suite A, Las Vegas, NV 89135.

**OREGON** - Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (800) 777-4001. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

Equal Housing Opportunity © 2008-2024 PennyMac Loan Services, LLC, 3043 Townsgate Rd, Suite 200, Westlake Village, CA 91361, 818-224-7442. NMLS ID # 35953 (www.nmlsconsumeraccess.org). Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries or affiliates. Arizona Mortgage Banker License # 0911088. Licensed by the Department of Financial Protection and Innovation under the California Residential Mortgage Lending Act. Colorado: Colorado office: 5500 South Quebec Street, Suite 260, Greenwood Village, Colorado 80111, (877) 215-2552. Massachusetts Mortgage Lender License # MC35953. Minnesota: This is not an offer to enter into an agreement and an offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4). Licensed by the N.J. Department of Banking and Insurance. Licensed Mortgage Banker-NYS Department of Financial Services. Rhode Island Lender License # 20092600LL. For more information, please visit PENNYMAC.COM/state-licenses. Co-op Loans not available. Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. (01-2024)